DOMENGEAUX, Judge,
dissenting.
If the trial judge favored the opinions of Mr. Blankenship, an oil and gas operator, whom plaintiffs tendered as an expert, I respectfully suggest that he was in legal error. The record glaringly indicates Mr. Blankenship’s close connections with the people who had the top lease on the premises involved and who of course had much to gain by a declaration that the lease expired. But even ignoring that fact, Mr. Blankenship’s opinions as to what did not constitute “reworking” were blunt and unexplained. Mr. Blankenship nevertheless, although reluctantly, admitted that when a well ceases production there is a need to try to determine the problem before getting into the hole with actual reworking equipment. He also agreed that he would also use the process of elimination to diagnose a well problem. He admitted that the term “workover” would in- *1125 elude “work performed on a well after its completion in an effort to restore production.” He further agrees that “preparation” and “finish up work” would be part of an overall workover operation.
On the other hand the testimony of Mr. Sulzbach, a petroleum engineer who testified as an expert for the defendant oil company, made it clear and logical under all circumstances of this case that the steps taken by the defendants culminating with the pressure testing of the tubing, all within 90 days of the cessation of production, constituted reworking operations.
It is inconceivable to me that this defendant would have done what it did if it had no intention to reproduce this well, and of course the end results indicate that intention. A substantial amount of money was expended to rework this well which resulted in higher production and greater benefits to the lessor-plaintiffs.
The jurisprudence gives no comprehensive definition, restrictive in nature, as to what “reworking” means. As was stated in the Harry Bourg Corporation case, cited in the majority opinion, each case must depend upon its own facts in the light of the opinions of the expert witnesses who testified. It would be my thought, as testified to by Mr. Sulzbach, that the repairs done to the surface pump in July 1981 and the testing of the tubing on September 14-15 were operations that were not normal day to day maintenance, but were part of an overall workover operation. The cases indicate as much. Of further significance, as stated in the Tidewater case 219 So.2d 616 (La.App. 3rd Cir.1969) no cases restrict the term “reworking of” to operations which “affect the ability of the formation to feed into the well bore.” Tidewater also noted that prior decisions gave “broad” definitions to the term “reworking operations.” I believe that the trial judge committed legal error in applying too strict an interpretation of what “reworking” consists of. Actually, the trial court in this instance was presented only with the question of applying legal principles to the facts presented. I respectfully suggest that he erred in his application.
The facts of this case satisfy me that reworking operations were commenced within the 90 day period provided for in order to prevent the termination of this lease.